UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-23253-Unassigned/Dubé

IN THE MATTER OF THE EXTRADITION

OF RAM CHOITHRAM NANDWANI,
_____/

MEMORANDUM IN OPPOSITION TO EXTRADITION

INTRODUCTION

Mr. Nandwani was arrested on December 17, 2007, here in South Florida where he has resided openly for six years. This Court granted bail to the 62-year old with no prior record and serious health conditions on January 8, 2008, finding special circumstances that warranted Mr. Nandwani's release. The government claims that Panama seeks Mr. Nandwani's presence to face criminal bankruptcy charges. As explained below, Ram Choithram Nandwani should not be extradited to Panama for at least four independently sufficient reasons. At the extradition hearing, we can provide original exhibits and witnesses to the Court in support of these arguments, if necessary. We will file by separate cover copies of the exhibits referenced herein.

MEMORANDUM OF LAW

The United States and Panama entered into a treaty in 1905, which is still in effect today. That Treaty permits extradition from the United States to Panama under limited circumstances outlined therein. Title 18 U.S.C. § 3184 sets forth how the United States should proceed in extraditing a person to another country, and explains that if the applicable treaty does not permit extradition, the Court shall not permit it to proceed.

As the United States Supreme Court has observed, the Magistrate Judge "should not accept without question the complainant's mere conclusions that" the requirements of extradition have been met. *In the Matter of the Extradition of Shlomo Ben-Tov*, 05-22201-Civ-Garber, quoting *Giordenello v. United States*, 357 U.S. 480, 486 (1958). The Magistrate Judge should not "serve merely as a rubber stamp" in an extradition proceeding. *Id., quoting Aguilar v. Texas*, 378 U.S. 108, 111 (1964).

If the Court denies the government's request to extradite Mr. Nandwani, its decision is not appealable. United States Attorney's Manual, at § 9-15.700 ("the order following the extradition hearing is not appealable"); United States Department of State Manual Volume 7 (2005), "Extradition of Fugitives from the United States," 7 FAM 1630 at www.state.gov/documents/organization/86815.pdf.

2

("The extradition judge's finding is not appealable by either side.").

Below, we explain why this Court should deny the government's request.

I.  *The Treaty does not permit extradition because the Statute of Limitations has run in the United States.*

    A.    The Statute of Limitations has run.

Article VII of the extradition treaty between the United States and Panama provides that:

> "*Extradition shall not be granted*, in pursuance of the provisions of this Treaty if legal proceedings or the enforcement of the penalty for the act committed by the person claimed has become barred by limitation, *according to the laws of the country to which the requisition is addressed.*" (emphasis added).

*See* Extradition Treaty Between the United States and Panama, Article VII, Attached as Exhibit A.

Accordingly, because the statute of limitations has run here in the United States (the laws of the country to which the requisition is addressed), Nandwani cannot be extradited.

Title 18 U.S.C. § 3282 provides: "No person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment if found or the information is instituted within five years next after such offense shall have been committed." The alleged crime in this case supposedly occurred back in 2002. In

fact, the Panamanian courts have set January 15, 2002, as the date of the last bankruptcy acts giving rise to these charges.  *See* Order, dated October 30, 2002, Attached as Exhibit B (stating that January 15, 2002 is "the date of characterization of the status of bankruptcy").

Five years from January 15, 2002, is January 15, 2007.  Because the statute of limitations ran on January 15, 2007, Ram Nandwani simply cannot be extradited.

The government argued at Mr. Nandwani's bond hearing that the treaty referred to the Panamanian statute of limitations, not the United States.  But this reading ignores the plain text of the treaty, which clearly states that the relevant inquiry is "the law[] of the country to which the requisition is addressed." Requisition means "the formal demand by one government upon another . . . [for] the surrender of a fugitive criminal."  Black's Law Dictionary, Sixth Edition.  Here, requisition was addressed to the United States, which has a five-year statute of limitations.  The government's reading of Article VII makes no sense.

    B.    Both Panama and the United States have known of Nandwani's whereabouts.

It is worth mentioning that Nandwani has lived open and notoriously here in the South Florida since he arrived in the United States in 2002. Both Panama and the United States have known where he lives, his exact address, and when he has

traveled outside of the United States. As early as 2003, Interpol Washington replied to the Panamanian authorities concerning Ram Nandwani's "migratory movements." *See* Interpol Correspondence, dated December 8, 2003, Attached as Exhibit C. The United States requested that Panama "clarify" the "reason for request and if extradition is being sought" provide them with a date of birth. *Id.* For the next two years, Panama never sought extradition nor informed the United States that it sought the arrest of Nandwani.[1]

In June 2005, the United States informed Panama that Ram Nandwani was a "resident of the State of Florida" and that he has "requested authorization for plans to travel to Goa, India, on 25 June 2005...to attend a two day wedding ceremony of his daughter." *See* Interpol Correspondence, dated June 20, 2005, Attached as Exhibit D. Interpol Washington asked Panama if it was "requesting his provisional arrest." *Id.* Again, Panama failed to respond to the United States' inquiry.

---

[1] In fact, during this time the Panamanian courts were made aware that Mr. Nandwani left Panama because of his serious health conditions. *See* Habeas Corpus 27, dated April 19, 2006, at 2, Attached as Exhibit G, ("Ram Nandwani has a heart condition, chest pain, diagnosed with myocardium infarct, hyperpotassemy, arteriosclerosis, diabetes, mellitus, cardiac dirhythmia, asthma, and gastritis."); Habeas Corpus Petition by Carlos Carillo at 15-17, Attached as Exhibit H (identifying and providing evidence that Ram Nandwani's severe medical conditions were treated in the U.S.).

Therefore, the United States granted Nandwani permission to travel to India.

On August 4, 2005, the United States briefly detained Nandwani at the airport on his way home. Immigration officials again contacted Panama to ask whether Nandwani was wanted there. *See* Interpol Correspondence, dated August 4, 2005, Attached as Exhibit E. The United States requested that it be immediately notified if the Panamanian authorities sought "provisional arrest." *Id.* The U.S. received no response and let Nandwani back into the country.

Finally, on August 19, 2005, in a follow up memorandum, the United States informed Panama that Nandwani "completed his travel out of the United States and has returned. He registers the same Florida address of record. If extradition will be sought, please immediately submit a request for provisional arrest, if appropriate, via the channel required by the extradition treaty between Panama and the United States." *See* Interpol Correspondence, dated August 19, 2005, Attached as Exhibit F. Not until two years and four months later was Mr. Nandwani finally arrested in the United States, at the same home he had been living in for the past four years. (And as explained below, this arrest was not properly made.)

Panama failed to act with due diligence in responding to the U.S. inquiries regarding arrest and extradition. Mr. Nandwani should not be penalized because

the statute of limitations has now run. Mr. Nandwani never concealed himself in the United States. Rather, he lived open and notoriously in the same home in Kendall since 2004. He maintained contact with Panama through his legal counsel. And he left Panama well before the initial arrest warrant was issued (subsequently replaced by provisional measures because there were no pending criminal charges as the bankruptcy matter was not "classified").

The bottom line is that while Nandwani has lived openly and notoriously here in the United States, the Statute of Limitations has expired. Accordingly, Mr. Nandwani cannot be extradited to Panama.

II.   *The case in Panama has not been classified as criminal by the presiding judge.*

In order for the United States to extradite Nandwani, Nandwani must have been "charged with or convicted of any of the crimes and offenses specified" in the treaty. *See* Treaty, Article I, Attached as Exhibit A (emphasis added). Nandwani has not been charged with or convicted of any crime in Panama. Instead, his case is still awaiting "classification" from the presiding bankruptcy judge as to whether it will proceed as criminal or civil.

In Habeas Corpus 27, dated April 19, 2006, the Second Superior Court of Panama stated:

7

>The truth is that the civil jurisdiction has not yet classified the bankruptcy, that is, *we do not know if we are before the commission of a crime; even though the Public Ministry is vested by law to begin the investigation in the event of bankruptcy, even when the same has not been classified, we cannot file charges, because the punishable act has not been proven*, that position was stated in resolution of December 13, 2002.

Again, on August 29, 2007, the Second Superior Court, in Habeas Corpus 40, reaffirmed its prior decision that:

>[The] Court has not finished the classification of the summary; in this period the juridical situation of the defendants...has not changed...until the Fifth Criminal Court of Panama takes a decision on the classification of the summary, then the Court may examine again the status of the defendants. *Id.* at 3-4.

Finally, on January 14, 2008, the Second Superior Court, in Habeas Corpus No.2, again, reaffirmed the same:

>The Seventeenth Civil Judge of the Circuit of Panama, by means of resolution of April 4, 2006, declared the closing of the administrative operations of the bankruptcy of the corporations...*without having classified the bankruptcy, that is, without establishing if whether or not it was fraudulent...*
>
>....
>
>it is the opinion of this Court that it is not in order the action of the habeas corpus filed, *because up to this time there is not an order of detention against Ram Choithram Nandwani inasmuch as he was granted a precautionary measure of the Second Court.*
>
>*See* Habeas Corpus 2, at 1 & 3, dated January 14, 2008, Attached as Exhibit I.

In Panama, before penal bankruptcy charges may be lodged, a civil court

8

assigned to the bankruptcy case must formally declare the bankruptcy to have been fraudulent in nature. Only then does the penal court, in this case the Fifth Criminal Court, have jurisdiction to proceed on criminal charges. As the Opinions above plainly state - that judicial determination of fraud has simply not yet occurred.

III.  *There is no valid extradition request or arrest warrant for Ram Nandwani in Panama.*

Although the government has provided defense counsel and the Court what appears to be an extradition request from the Panamanian government, no valid extradition request or arrest warrant exists in this case. Prior exhibits submitted to the Court (which are part of the court file) demonstrate this fact:

   A.   Habeas Corpus 27, dated April 19, 2006 issued by Second Superior Court of Panama.

   B.   Habeas Corpus 40, August 29, 2007 issued by Second Superior Court of Panama.

   C.   Letter from Second Superior Court, dated April 26, 2006 to the Director of the Technical Judicial Police - advising him to rescind arrest warrant of June 13, 2003.

   D.   Affidavit of Carlos Carrillo Gomilla, at ¶¶ 7, 12, dated January 5, 2008 stating:

1. "To this date we have not been notified or have been notified of a warrant of detention whatsoever against Mr. RAM CHOITHRAM NANDWANI."

2. "To this date there is not a valid updated warrant for the extradition of Mr. RAM CHOITHRAM NANDWANI. The judge has not pressed criminal charges against Mr. Nandwani in Panama. Neither is there a warrant of arrest against Mr. Nandwani."

On March 24, 2008, the full court of the Fifth Criminal Circuit Court of Panama, once again stated that "up to this date, there is not any warrant of arrest issued against [Ram Nandwani]" since the court upheld the precautionary measures were valid and justified. *See* Order, dated March 24, 2008, at 2, Attached as Exhibit J.[2]

Only days ago, a Panamanian judge acknowledged that "there is neither a

---

[2]Interestingly, on February 18, 2008, a new Panamanian law took effect which prohibited a judge in a bankruptcy proceeding to prohibit an accused from leaving the country. *See* Order, dated February 26, 2008, at 3, Attached as Exhibit K. In light of the new law, the First Judicial Circuit of Panama dismissed "the impediment [on Ram Nandwani] to leave the country." *Id.* at 4. Obviously, such an order could never have been issued had there been a valid arrest warrant issued for Ram Nandwani.

10

warrant of preventive detention or arrest" against Ram Nandwani. *See* Letter from Fifth Criminal Circuit Court, dated March 26, 2008, Attached as Exhibit L. The court candidly admitted that it wished to "serve" him with a writ but it failed to identify any specific charges alleged against Nandwani for fraud, bankruptcy fraud or any other corresponding federal offense. *Id.*

The same court requested the bankruptcy judge, Jorge Issac Escobar, to inform it when there was "a classification" because no formal charges against Ram Nandwani existed. *See* Letter from Fifth Criminal Circuit Court dated March 25, 2008, Attached at Exhibit M.

The Treaty between the United States and Panama requires an arrest warrant and actual criminal charges before a person may be extradited. Panama cannot simply circumvent this requirement. This Court should not allow Panama to play fast and loose with its obligations under the Treaty. Panama must seek extradition once the matter has been classified and an arrest warrant issued. If not, Mr. Nandwani may not be extradited.

IV.     *Bankruptcy is not an extraditable offense.*

The Treaty sets forth all the crimes for which Nandwani can be extradited. *See* Treaty, Article II. Bankruptcy is not listed in the 13 subsections, which contains

11

at least 47 different crimes. The government is correct to note that fraud is an extraditable offense. *See* Treaty, at Article II, subsection 7. But Mr. Nandwani hasn't been charged with fraud.

Unlike the United States, Panama criminalizes both fraud and bankruptcy. Chapter V of the Bankruptcy and Insolvency Section of the Panamanian Criminal Code, differentiates between fraudulent and negligent bankruptcy. Article 386 states: "The party declared in *fraudulent bankruptcy* pursuant to the Commercial Code, shall be sentenced from 2 to 3 years of prison and disqualification to engage in business and trade from three to ten years." Article 387 states: "The party declared in *negligent bankruptcy* pursuant to the Commercial Code, shall be sentenced from 1 to 3 years of prison and disqualification to engage in business and trade from one to three years."

In the Treaty, there is no enumerated offense that allows for extradition because of "negligence." Each extraditable crime in the Treaty requires an element of criminal "intent."[3]  *In re Extradition of Lehming*, 951 F. Supp. 505 (D. Del. 1995)(denying request for extradition where evidence did not establish probable

---

[3]Even the section relating to homicides, specifically requires a "voluntary" rather than an involuntary or negligent act. *See* Treaty, at Article II.

cause that fugitive committed offense of bankruptcy fraud as there remained issued relating to his criminal intent); *United States v. Peterka*, 307 F. Supp. 2d 1344 (M.D. Fla. 2003) (denying request for extradition where there was insufficient evidence that fugitive committed offense of tax evasion and fraud and that his actions were crimes in the Czech Republic and in the United States); *United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358 (S.D. Fla. 1999)(denying request for extradition where the government failed to show probable cause to believe that a fugitive committed the crimes for which she was convicted in Bolivia); *In re Extradition of Petr Lukes*, 2003 WL 23892681 (M.D. Fla. 2003)(denying request for extradition where harming a creditor during a bankruptcy did not satisfy the dual criminality doctrine).

Similar to the case at bar, *In re Exradtion of Petr Lukes* involved the chairman of Board of Directors of a Czech company, VT Chomutuv. The Board voted to restructure the company and went through "a procedure corresponding to a bankruptcy." 2003 WL 23892681, at 5. The government presented evidence that some of the creditors were not aware of the transfer of the company's assets and that the company had debts due and owing. The government therefore asserted that the transactions amounted to fraud, and the named creditors were victims. The court, however, held that the crime of harming a creditor does not include the element of

13

fraud. *Id.*

The court cited Judge Garber's decision in the *United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358 (S.D. Fla. 1999), to support its holding. Judge Garber held that "Bolivian convictions for United States citizens for fraud, illegal association, and breach of trust failed to satisfy the dual criminality requirement for extradition." *Id.* Simply holding an executive position in a company whose subsidiaries engaged in questionable business practices was not enough to show probable cause for fraud or breach of trust. *Id.* The court added, "[t]o prove criminal fraud, there must be a specific intent to defraud." *Id.* at *6. Judge Garber found there was no probable cause to prove criminal fraud and held that "the remedies involved (if any) were civil in nature, not criminal." *Id.*

Here, there has been no determination by the Panamanian courts as to whether they are seeking Mr. Nandwani's extradition pursuant to Article 386 or 387 or whether they are going to seek his extradition at all. If anything, the latest documents by the Fifth Judicial Circuit shed no light on this. Indeed, the alleged crime is never referred to as fraud, or bankruptcy fraud. Rather, the Fifth Criminal Circuit Court wants "to serve" Mr. Nandwani with an indictment for "the crime Against the National Economy" even where no arrest warrant has been issued. *See*

Request for Judicial Assistance from Fifth Criminal Circuit Court, dated March 25, 2008, Attached as Exhibit N; Letter from Fifth Criminal Court, dated March 26, 2008, Attached as Exhibit O.  However, the same court concedes that there has been no "classification" and requests the bankruptcy court to advise the Court when "a resolution has been issued."  *See* Letter from Fifth Criminal Circuit Court, dated March 25, 2008, Attached as Exhibit P ("With due respect, please advise if in the summary proceedings pursued against Ram Nandwani et al., charged with the crime against the national economy, in detriment of the banking entities..., a resolution has been issued (if there is any classification). If so, please send to us authenticated copy of the resolution, otherwise, please advise of the status of the summary proceedings.").

    There is no evidence that a "crime against the economy" amounts to criminal fraud, bankruptcy fraud, negligent fraud, or any other fraud.  Simply put, the bankruptcy judge has not "classified" this matter and the Fifth Criminal Circuit Court so acknowledged it.  In sum, the government cannot tender any evidence to establish "dual criminality" because Panama still does not know what, if any, criminal offenses Mr. Nandwani will be charged with.  Until the matter is classified, any request for extradition is premature.  Instead, it appears now that the

15

Panamanian authorities are attempting to manipulate and persuade our government to extradite Nandwani without following the requirements of the Treaty. This is simply unacceptable. Therefore, the government's request for extradition must be denied.

WHEREFORE, the government's request that Mr. Nandawani be extradited to Panama be denied.

Respectfully submitted,

/s/ David Oscar Markus
_____
David Oscar Markus
Fla. Bar No. 119318

David Oscar Markus, PLLC
Alfred I. duPont Building
169 East Flagler Street, Suite 1200
Miami, FL 33131
Tel: (305) 379-6667
Fax: (305) 379-6668
Email: dmarkus@markuslaw.com

/s/ Marc David Seitles
_____
Marc David Seitles
Fla. Bar No. 0178284

The Law Offices of Marc David Seitles, P.A.
Alfred I. duPont Building
169 East Flagler Street, Suite 1200
Miami, FL 33131

>Tel: (305) 379-6667
>Fax: (305) 379-6668
>Email: mseitles@seitleslaw.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 31, 2008, undersigned electronically filed the foregoing document with the Clerk of Court using CM/ECF.

>/s/ Marc David Seitles
>_____
>Marc David Seitles, Esq.